CECIL E. AND RUTH P. MAINER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mainer v. Commissioner
Docket No. 5597-87.
United States Tax Court
T.C. Memo 1988-282; 1988 Tax Ct. Memo LEXIS 304; 55 T.C.M. (CCH) 1168; T.C.M. (RIA) 88282; June 28, 1988. Cecil E. and Ruth P. Mainer, pro se. Scott T. Welch, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioners' 1983 income tax in the amount of $ 2,872. The issues are: (1) Whether Cecil E. Mainer (hereinafter "petitioner") received income in the amount of $ 9,773 from Ansardi Truck Service (Ansardi) in 1983; and (2) whether petitioners are liable for self-employment tax. [1]
For convenience, we have combined our findings of fact and opinion. Petitioners have the *305 burden of proof. . Rule 142(a). [2]
Some of the facts have been stipulated and the stipulation is incorporated herein by this reference. Petitioners were married individuals residing in Pearl River, Louisiana, at the time they filed the petition in the above-entitled case. During 1983 petitioner was a truck driver. He worked for five employers during that year. He worked for only one employer at a time, full-time. He was also unemployed for part of the year, and was not in good health. On their joint individual income tax return for 1983 petitioners reported wages of $ 12,318; [3] $ 10,158.63 of this was Cecil Mainer's income, reflected on W-2 Forms as follows: C. G. Smith Co., Inc.
$    547.50
Louisiana Scrap Metal Co.
2,786.88
Industrial Concrete & Supply, Inc.
4,300.76
Intercontinental Industries, Inc.
2,523.49
$ 10,158.63
Petitioner admits he also worked for Ansardi during 1983 *306 and did not report any income from that employment. He made several telephone requests for a W-2 Form, but never received one. Petitioner, who has little education, did not keep his own records of the amount received and was unsure what amount to report. We must determine how much money petitioner in fact was paid by Ansardi in 1983, and whether petitioner was liable for self-employment tax on that amount. The resolution of this issue depends upon whether we believe petitioner and Mrs. Mainer on the one hand, or Marie Ansardi, respondent's witness, on the other. We therefore examine their testimony. Petitioners testified as follows. Early in 1983 petitioner worked for Louisiana Scrap Metal Co. His last day there was February 4, 1983. (This date was substantiated by the company.) Petitioner testified he was unemployed for a period between his work at Louisiana Scrap Metal Co. and Ansardi. He did not work for Ansardi more than "3 or 3-1/2 months." He stated he was promised wages of $ 5.50 per hour but was paid only $ 5 per hour. Both petitioners testified that Mr. Mainer was sick with severe headaches during a portion of this time and was unable to work. For this reason *307 he did not work more than 45 hours per week. Ms. Ansardi is the wife of the owner of Ansardi Truck Service, and was the bookkeeper in 1983. She testified that petitioner worked there from February 4, 1983 through July 21, 1983. She said he left there because of sickness due to severe headaches. She testified that he was paid a total of $ 9,773 at $ 6 to $ 6.25 per hour, and that Ansardi issued him a Form 1099 in that amount. Ms. Ansardi produced the company's "records," which consisted entirely of pages in a spiral notebook with dates and numbers written all over the pages. Ms. Ansardi testified this represented the dates and number of hours worked each day. Totals, purportedly representing wages paid, were inserted in a different color ink, which Ms. Ansardi acknowledged might have been written in later in connection with this case. Ms. Ansardi stated that the company kept no other records of amounts paid to petitioner and other truck drivers during 1983. She stated that the drivers were paid in cash in an envelope with the hours marked on the envelope. No receipts were requested or obtained from the truck drivers. Ansardi did not withhold any income tax or social security *308 taxes from petitioner's wages. All drivers were required to sign a form stating they were independent contractors and were responsible for their own taxes. Petitioner signed an undated form stating his name, date of birth, Louisiana license number, social security number, and address. In addition, the form stated: I Cecil E. Mainer agree to contract my services to Walter R. Ansardi on a job bases [sic]. I understand that I am responsible for reporting my income to the I.R.S. and that I am responsible for paying my own taxes as an individual contractor.
Petitioner stated he was told he was signing a form required by the company's insurance provider. We cannot find completely reliable the testimony of either petitioners or of Ms. Ansardi. We think petitioners tried to testify truthfully, but they could not remember many details. Petitioner kept no records of the dates he was employed by Ansardi, the number of hours worked, or the wages he was paid each week. At trial he testified he was promised $ 5.50 but was paid only $ 5 per hour; however, in his petition he states he was paid $ 5.50 per hour. On the other hand, Ms. Ansardi's records are highly suspect. They *309 show petitioner working as much as 17 hours per day, during a period when petitioner was in ill health. Ansardi's records are extremely crude and ill kept. Dates are not in sequence. Some entries are marked over or stricken through. Petitioner's name appears on only one page, in which other names of drivers also appear. The other pages purporting to be records of petitioner's time do not bear petitioner's name, but do follow in sequence after a single page bearing petitioner's name. Further, Ansardi's records show petitioner having worked 113 days. Some of these dates appear to be clearly erroneous. For example, Ansardi shows petitioner having worked 13 hours on February 4, the same day which was his last day at Louisiana Scrap Metal Co. Taking all the facts and circumstances into account, we make as close an approximation as possible. . We find that petitioner worked 100 days for Ansardi, averaging 10 hours per day at $ 5.50 per hour, for total wages of $ 5,500 in 1983. Petitioners' joint gross income was therefore $ 17,818. [4]
*310 We further find that Ansardi gave petitioner his work assignments and generally directed his work; therefore, petitioner was Ansardi's employee and not an independent contractor during the time he worked there. Petitioner is thus not liable for self-employment taxes. Decision will be entered under Rule 155.
Footnotes
1. Ruth Mainer ("Mrs. Mainer") received and reported unemployment compensation of $ 1,955. If we find that petitioners' joint income exceeds the base amount of $ 18,000, Mrs. Mainer's unemployment compensation will automatically become fully taxable. Section 85. ↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure; section references are to the Internal Revenue Code as in effect for the years in issue. ↩
3. The amounts were rounded. ↩
4. Since their income did not exceed the base amount of $ 18,000, Mrs. Mainer's unemployment compensation is therefore not taxable. ↩